FARM AND CITY INSURANCE COMPANY *v.*
ALVIN L. STEVENS
(13855)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued March 8—decision released May 22, 1990

---

*Thomas B. Wilson,* for the appellant (defendant).

*John W. Lemega,* for the appellee (plaintiff).

COVELLO, J. This is an appeal from a judgment of the trial court vacating an underinsured motorist arbitration award. The sole issue presented is whether the primary tortfeasor was underinsured. We agree with the trial court that he was not, and therefore find no error.

The relevant facts are not in dispute. On February 15, 1987, the defendant, Alvin L. Stevens, was injured while riding as a passenger in an automobile owned and operated by Tony F. Webber. The accident was solely Webber's fault. The defendant sustained injuries and damages in excess of $50,000.

At the time of the accident, Webber had a $25,000 automobile liability policy. The policy also provided $25,000 uninsured/underinsured motorist coverage. Webber's carrier paid the defendant $25,000, the full amount of the liability coverage.

At the time of the accident, the defendant was also insured as a member of the household, under an automobile liability policy issued by the plaintiff to the defendant's wife, Annette Stevens. This policy also provided $25,000 of uninsured/underinsured motorist coverage. The defendant filed a claim under the underinsured motorist provisions of his wife's policy.

Unable to agree as to whether this was an underinsured motorist situation, the parties proceeded to arbi-

tration in accordance with the policy's provisions. The arbitrator concluded that inasmuch as there was $25,000 of underinsured motorist coverage on the Webber vehicle and $25,000 of underinsured motorist coverage on the Annette Stevens vehicle, and inasmuch as the liability portion of Webber's policy was only $25,000, Webber was underinsured by $25,000. The arbitrator therefore awarded the defendant the full $25,000 underinsured motorist coverage contained in the Annette Stevens policy.

The plaintiff thereafter filed an application in Superior Court to vacate the arbitration award.[1] The defendant sought to confirm the award. The trial court concluded that the Webber vehicle was not underinsured and therefore there was no basis for the defendant's claim under the Annette Stevens policy. The trial court vacated the award. The defendant appealed to the Appellate Court. We thereafter transferred the appeal to ourselves pursuant to Practice Book § 4023.

General Statutes § 38-175c (b) (2) defines an underinsured motor vehicle as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."[2] In the present case,

---

[1] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[2] General Statutes § 38-175c (b) (1) provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no

therefore, all liability policies applicable to the Webber vehicle are to be measured against the uninsured motorist portion of the policy against which the claim is being made, i.e., the Annette Stevens policy.

The liability limits contained in the Webber policy were $25,000. The uninsured motorist limits contained in the Annette Stevens policy were $25,000. Since the liability limits were not less than the uninsured motorist limits, the Webber vehicle was not underinsured.

Despite the statute's clear mandate to compare the applicable limits of the liability policy to the uninsured motorist policy "against which claim is made," the defendant argues that the $25,000 of uninsured motorist coverage contained in the policy insuring the Webber vehicle is to be aggregated or "stacked"[3] with the

event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage."

[3] " 'Stacking' refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate. See *Blakeslee* v. *Farm Bureau Mutual Ins. Co.,* 388 Mich. 464, 473, 201 N.W.2d 786 (1972); see also *Van Hoozer* v. *Farmers Ins. Exchange,* 219 Kan. 595, 608, 549 P.2d 1354 (1976); *Detroit Automobile Inter-Insurance Exchange* v. *McMillan,* 97 Mich. App. 687, 693, 296 N.W.2d 147 (1980); 7 Am. Jur. 2d, Automobile Insurance § 326; 8C Appleman, Insurance Law and Practice § 5103; Widiss, A Guide to Uninsured Motorist Coverage § 2.34a (1981 Sup.); 19 Couch, Insurance (2d Ed.) § 82.1:11 (Pocket Sup.). One court has noted that '[s]tacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere.' *Travelers Ins. Co.* v. *Pac,* 337 So. 2d 397, 398 (Fla. App. 1976); see *Hartford Accident & Indemnity Co.* v. *Bridges,* 350 So. 2d 1379, 1381 (Miss. 1977); *Grimes* v. *Concord General Mutual Ins. Co.,* 120 N.H. 718, 721–22, 422 A.2d 1312 (1980). 'Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy.' *Taft* v. *Cerwonka,* 433 A.2d 215, 217 n.3 (R.I. 1981); see *Lumbermens Mutual Casualty Co.* v. *Martin,* 399 So. 2d 536, 538 n.4 (Fla. App. 1981)." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388–89 n.2, 446 A.2d 1059 (1982).

$25,000 of uninsured motorist coverage on the Annette Stevens vehicle for a total of $50,000 thereby creating a shortfall of $25,000 in liability coverage and thereby making the Webber vehicle underinsured.

The defendant claims that his position is supported by our holding in *Nationwide Ins. Co. v. Gode,* 187 Conn. 386, 446 A.2d 1059 (1982). While the cases have many similarities, there is an important distinction. In *Gode,* the claimant, Christopher Gode, was injured while riding as a passenger in an automobile operated by Timothy Dolan. Dolan's carrier paid the claimant $20,000 under the liability provisions of Dolan's policy.

As here, at the time of the accident, Christopher Gode was also insured as a member of the household, under an automobile liability policy issued by the plaintiff, Nationwide Insurance Company, to his father, John H. Gode, Jr. The Nationwide policy provided uninsured motorist coverage in the amount of $20,000. There were two cars insured under the policy. We held that in determining whether the Dolan vehicle was underinsured, Christopher Gode could "stack" or aggregate the $20,000 of uninsured motorist coverage on each of the two vehicles insured under the Gode policy for a total of $40,000 of uninsured motorist coverage. Since there was $40,000 of uninsured coverage on the Gode policy as opposed to only $20,000 of liability coverage under the Dolan policy, we concluded that the Dolan vehicle was "underinsured," and permitted Christopher Gode to recover $20,000 damages under the uninsured motorist coverage contained in "the policy against which claim is made." We did not, as the claimant here seeks, "stack" or aggregate the uninsured motorist coverage on the Gode vehicles with the uninsured motorist coverage on the tortfeasor's vehicle in determining that the liability coverage was less than the uninsured motorist coverage.

If, hypothetically, the policy insuring the Webber vehicle had $150,000 liability coverage and $150,000 uninsured/underinsured motorist coverage, and if the Annette Stevens policy had only $25,000 of uninsured/underinsured motorist coverage, the defendant's argument would still have us conclude that the Webber vehicle was underinsured. By adding the $150,000 of uninsured motorist coverage on the Webber vehicle to the $25,000 of uninsured/underinsured motorist coverage on the Annette Stevens vehicle, the uninsured motorist coverage would exceed the liability coverage by $25,000. This is clearly an untenable result and not within the contemplation of § 38-175c (b) (2).

The judgment is affirmed.

In this opinion the other justices concurred.