ALLSTATE INSURANCE COMPANY *v.* BENJAMIN LENDA
(11362)

FOTI, LANDAU and FREEDMAN, Js.

Argued December 1, 1993—decision released May 24, 1994

*Stephen E. Goldman,* with whom was *Raymond T. DeMeo,* for the appellant (plaintiff).

*Kathryn Calibey,* for the appellee (defendant).

FREEDMAN, J. The plaintiff, Allstate Insurance Company, appeals from the judgment of the trial court denying its application to vacate an arbitration award. The plaintiff claims that the trial court improperly confirmed the arbitration award because (1) it improperly stacked[1] the applicable insurance policy benefits of the defendant, Benjamin Lenda, in determining that the tortfeasor's vehicle was underinsured,[2] (2) the defendant was no longer legally entitled to recover from the tortfeasor, (3) it failed to allow a reduction in the amount of underinsured motorist benefits awarded to the defendant by the full amount of the tortfeasor's liability coverage paid by the tortfeasor's insurer, and (4) it failed to order a setoff for collateral source recovery pursuant to General Statutes § 52-225a. We affirm in part and reverse in part.

The facts, as stipulated by the parties, are as follows. On May 24, 1989, Lenda sustained personal injuries in a five car collision. He was operating his personal vehicle in the left westbound lane when an eastbound vehicle, operated by Peter Seymour, crossed the center line and struck Lenda's vehicle head-on. The negligence and legal liability for the collision rested solely with Seymour. The only liability insurance available to Seymour was a combined single limit policy with Travelers Insur-

---

[1] "Stacking refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388 n.2, 446 A.2d 1059 (1982)." (Internal quotation marks omitted.) *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 31 n.2, 594 A.2d 977 (1991).

[2] "We have often held that statutes and regulations that apply to uninsured motorist coverage equally apply to underinsured motorist coverage. *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 28 n.9, 610 A.2d 1292 (1992); *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 210–11, 603 A.2d 385 (1992); *Nationwide Ins. Co.* v. *Gode,* supra, [187 Conn.] 399–400." *Buell* v. *American Universal Ins. Co.,* 224 Conn. 766, 769 n.1, 621 A.2d 262 (1993).

ance Company with coverage of $100,000.[3] Seymour's liability insurance has been exhausted for purposes of this underinsured motorist claim.

At the time of the accident, the vehicle operated by Lenda was insured with Allstate. The Allstate policy was in force and effect at the time of the accident. Lenda's policy with Allstate provided $100,000 in uninsured or underinsured motorist coverage on each of two vehicles. Lenda was the named insured on this policy. Allstate has paid a total of $5000 in basic reparations benefits to or on behalf of Lenda, and is entitled to a credit or setoff in that amount.

Because the parties were unable to agree whether any underinsured motorist benefits were due Lenda, the trial court entered an order compelling arbitration of Lenda's claim for underinsured motorist benefits. After a hearing, the arbitrators found that, in determining the potentially available underinsured motorist coverage, Lenda was entitled to stack the policy's $100,000 in underinsured motorist coverage on both of his vehicles for a total coverage of $200,000. The arbitrators also found that Lenda's damages exceeded the total underinsured coverage available. They did not specify, however, the exact amount of damages. In addition, the arbitrators found that Allstate was entitled to a credit of $73,071.51, the amount paid by Seymour to Lenda, pursuant to a stipulated judgment, for personal injuries, and a credit of $5000 for the reparations benefits paid to Lenda by Allstate. The arbitrators rejected Allstate's claim that the stipulated judgment against Seymour constituted a bar to receiving underinsured motorist benefits.

---

[3] The $100,000 was paid out as follows: $73,071.51 paid to Lenda for personal injuries, $6987.45 paid to Lenda for property damage, $3300.15 paid to Patricia Fritsch for property damage, $3441.60 paid to James Hanrahan for property damage, $6458.06 paid to Susan Tharnish for property damage, and $6661.23 paid to Patricia Fritsch for personal injuries.

Allstate thereafter filed an application to vacate, correct or modify the award. Lenda sought to confirm the award. A hearing was held and the trial court concluded that the Seymour vehicle was underinsured and, therefore, the trial court denied Allstate's application to vacate and granted Lenda's motion to confirm. Allstate appealed to this court. Allstate subsequently filed a motion for articulation with the trial court. Pursuant to that motion, the trial court issued an articulation of its decision.

I

Allstate claims that the trial court improperly confirmed the arbitration award after improperly determining that the tortfeasor's vehicle was underinsured. Specifically, Allstate claims that the arbitrators should not have stacked the underinsured motorist coverage for the two vehicles covered by Lenda's policy. We disagree.

"In reviewing compulsory arbitration cases, this court must conduct a de novo review of the arbitrator's interpretation and application of the law. . . ." (Citations omitted; internal quotation marks omitted.) *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 770, 621 A.2d 262 (1993).

We begin our analysis by examining General Statutes § 38a-336. "The application of § 38a-336[4] requires two distinct steps: (1) determining whether a vehicle is in fact underinsured, so that coverage is available; and (2) calculating the amount of the actual award due

[4] General Statutes § 38a-336 (d) (formerly [Rev. to 1989] § 38-175c) provides: "For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

the victim." *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 36, 594 A.2d 977 (1991). "Thus, in making the initial determination whether a [tortfeasor's] vehicle is underinsured, § 38a-336 clearly states that the aggregate of the liability limits under all of the tortfeasor's *policies* are to be compared with the uninsured motorist coverage limit of *the policy* against which a claim is made. The statute unequivocally refers to the liability provisions in the plural but the uninsured motorist provisions in the singular. Consequently, the analysis directed by § 38a-336 requires a comparison between the *aggregate* of [the tortfeasor's] liability limits available to the victim against the underinsured motorist limits in each *single* policy against which the victim has a claim." (Emphasis in original.) Id., 35–36. In short, all liability policies applicable to the Seymour vehicle are to be measured against the uninsured motorist portion of the Lenda policy.

The question presented here is whether intrapolicy stacking[5] is permitted in making the initial determination of whether a motor vehicle is underinsured. To answer this question, we must first examine three decisions of our Supreme Court, *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982), *Farm & City Ins. Co.* v. *Stevens,* 215 Conn. 157, 574 A.2d 1300 (1990), and *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 30. We conclude that, when read together, although these cases do not permit interpolicy stacking to determine whether a motor vehicle is underinsured, they do permit intrapolicy stacking in making such a determination.[6]

---

[5] "Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy." (Internal quotation marks omitted.) *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 389 n.2, 446 A.2d 1059 (1982).

[6] After the briefs of the appellant and the appellee were filed, but before the appellant's reply brief was filed, our Supreme Court issued its opinion

In *Gode,* the court held that intrapolicy stacking was permitted in determining whether a motor vehicle is underinsured. Additionally, the court implied in dicta that, because the singular term *policy* in General Statutes § 38a-336, (then General Statutes [Rev. to 1989] § 38-175c) could also be interpreted as the plural *policies,* interpolicy stacking would also be permitted. *Nationwide Ins. Co.* v. *Gode,* supra, 187 Conn. 394–95. Later, in *Stevens,* the court rejected that interpretation and did not permit stacking of the uninsured motorist coverage on the claimant's vehicles with the uninsured motorist coverage on the tortfeasor's vehicle. *Farm & City Ins. Co.* v. *Stevens,* supra, 215 Conn. 161. The court, however, reaffirmed that portion of *Gode* that permitted intrapolicy stacking. Id.

Thereafter, in *Coon,* the court further construed the method by which it is determined whether a motor vehicle is underinsured. In *Coon,* the arbitrators stacked a policy issued to the claimant and one issued to the driver of the car in which the claimant was a passenger

in *Kent* v. *Middlesex Mutual Assurance Co.,* 226 Conn. 427, 627 A.2d 1319 (1993). In *Kent,* the defendant argued that the claimant could not reasonably have expected intrapolicy stacking. The Supreme Court conducted an inquiry into the reasonable expectations of the parties in light of the individual facts and circumstances surrounding the insurance coverage. Id., 434. The court held that because (1) "the named plaintiff signed the application for insurance immediately following the statement: 'I understand and acknowledge that the limits of UNINSURED or UNDERINSURED MOTORIST COVERAGE are applicable ONCE per claim regardless of the number of vehicles or operators on the policy now or in the future'"; id., 435; (2) the policy itself contained basically the same language as the application regarding uninsured and underinsured motorist coverage; id.; (3) in their testimony the plaintiffs professed no expectation of stacked coverage; id., 434; and (4) the plaintiffs "paid a single actuarially appropriate premium for underinsured motorist coverage on their own vehicles"; id.; the plaintiffs could not have had a reasonable expectation that their underinsured motorist coverage would be stacked. Here, neither party argued or presented any evidence to the arbitration panel regarding the reasonable expectations of Lenda as to the total amount of underinsured coverage. Nor was any such argument made to this court. Therefore, we need not address this issue.

to determine whether the claimant's vehicle was underinsured. *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 35. The court held that, because the statute was not ambiguous, the word *policy* in General Statutes § 38a-336 could not be interpreted also to mean *policies* as stated in *Gode.* Id., 35–36. The court overruled *Gode* only to the extent that it may have permitted interpolicy stacking and specifically prohibited interpolicy stacking in the initial determination of coverage. Id., 36 n.6.

Here, unlike in *Coon,* Lenda's one policy covered two vehicles. Reading *Gode, Stevens,* and *Coon* together, we conclude that in determining whether a motor vehicle is underinsured, intrapolicy stacking is permitted. Therefore, the trial court properly stacked Lenda's uninsured motorist coverage under his multiple vehicle policy in determining that Seymour's motor vehicle was underinsured. Here, Lenda's policy covered two motor vehicles for $100,000 each in uninsured motorist coverage for a total of $200,000. The liability limit of Seymour's policy was $100,000. Because Seymour's liability limit is less than Lenda's uninsured coverage, Seymour's motor vehicle was underinsured.

## II

Allstate next claims that the trial court improperly confirmed the arbitration award because the insured was not legally entitled to recover from Seymour after having entered into a stipulated judgment. We do not address this issue because Allstate failed to raise it before the trial court.

Allstate initially submitted this issue to arbitration. The arbitrators' decision and award held that Lenda's claim was not barred by the stipulated judgment between Seymour and Lenda. Allstate, however, did not raise this claim in the trial court. "Accordingly, we do not review this claim raised for the first time on

appeal. *Rydingsword* v. *Liberty Mutual Ins. Co.*, [224 Conn. 8, 9–10 n.1, 615 A.2d 1032 (1992)]; *Cahill* v. *Board of Education*, 187 Conn. 94, 99–100, 444 A.2d 907 (1982). 'Only in the most exceptional circumstances will this court consider a claim that was not raised in the trial court. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of the public welfare or of justice between the parties.' . . . *Cahill* v. *Board of Education*, supra [99–100]." (Citations omitted.) *D'Addio* v. *Connecticut Ins. Guaranty Assn.*, 30 Conn. App. 729, 736, 622 A.2d 609 (1993). We conclude that these exceptions are not applicable in this case and, thus, we will not review this claim.

## III

Allstate next claims that the trial court improperly confirmed the arbitration award because it failed to reduce the amount of underinsured motorist benefits awarded to Lenda by the full amount of the liability coverage paid by or on behalf of Seymour. We agree. Allstate claims that it is entitled to a reduction of the entire amount ($100,000) paid by Travelers Insurance Company on behalf of Seymour. This includes $73,071.51 paid to Lenda for personal injuries, $6987.45 paid to Lenda for property damage, $3300.15 paid to Patricia Fritsch for property damage, $3441.60 paid to James Hanrahan for property damage, $6458.06 paid to Susan Tharnish for property damage, and $6661.23 paid to Patricia Fritsch for personal injuries.

We begin our analysis by determining whether the terms of Lenda's insurance policy permitted Allstate to reduce the amount owed to Lenda for underinsured

motorist coverage by (1) payments made by or on behalf of Seymour to other persons injured in the accident, and (2) payments made for property damages to Lenda and to others involved in the accident.

" 'An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.' *Schultz* v. *Hartford Fire Ins. Co.,* 213 Conn. 696, 702, 569 A.2d 1131 (1990). The policy words must be accorded their natural and ordinary meaning. *Kelly* v. *Figueiredo,* 223 Conn. 31, 35, 610 A.2d 1296 (1992). Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 375, 593 A.2d 498 (1991). This rule of construction may be not applied, however, unless the policy terms are indeed ambiguous. *Kelly* v. *Figueiredo,* supra, 37. Moreover, the mere fact that the parties advance different interpretations of the language in question ' "does not necessitate a conclusion that the language is ambiguous." ' Id." *Stephan* v. *Pennsylvania General Ins. Co.,* 224 Conn. 758, 763–64, 621 A.2d 258 (1993).

Here, the policy contains the following language: "We will pay those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by an insured person. . . . The coverage limit for: (1) 'each person' is the total of all damages arising out of bodily injury to one person in any one motor vehicle accident. . . . The limits of this coverage will be reduced by: (1) all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy." The policy

language limiting coverage states that "all amounts paid" will be used to reduce the limits of the coverage and specifies that "all amounts paid" "*includes* all sums paid under the bodily injury liability coverage . . . ." (Emphasis added.) The policy does not say that the limits of coverage will be reduced by sums paid *only* under the bodily injury liability coverage. Nor does it say sums paid *only* to the claimant. In fact, the word "includes," when accorded its natural and ordinary meaning, suggests that there are other sums by which the limits of the coverage may be reduced.[7] Additionally, the phrase "all amounts paid" is exceptionally broad and unrestricted regarding the types of damages that may be used to reduce the limits of the coverage. We hold, therefore, that under the terms of the policy, Allstate is entitled to reduce the amount of underinsured motorist benefits payable to Lenda by all the amounts paid by or on behalf of Seymour to all injured parties both for personal injury and for property damages.

Having determined that Lenda's policy with Allstate provides for these reductions, we next must determine whether the reduction is allowed under § 38a-334-6 of the Regulations of Connecticut State Agencies.[8]

[7] "Include" is defined as "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." Webster's Third New International Dictionary.

[8] Section 38a-334-6 of the Regulations of Connecticut State Agencies (formerly § 38-175a-6 [d]) provides: "LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been

"(1) paid by or on behalf of any person responsible for the injury,

"(2) paid or are payable under any workers' compensation or disability benefits law, or

"(3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits

"[W]e have held repeatedly that 'an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies expressly authorizes.' (Emphasis added.) *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 483, 518 A.2d 373 (1986); *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 452–53, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode,* [supra, 187 Conn. 398–99]; *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 332–33, 387 A.2d 539 (1978); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 448–51, 370 A.2d 1006 (1976)." *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 219 Conn. 377–78.

Section 38a-334-6 of the regulations provides in pertinent part that "the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury . . . ." Lenda claims that the phrase "the injury" limits the amounts that may be used to reduce the limits of coverage to only those attributable to the claimant's injury and not to the injury of others. In support, Lenda cites *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 224 Conn. 758, and *Buell* v. *American Universal Ins. Co.,* supra, 224 Conn. 766. The language at issue in the policies in *Stephan* and in *Buell* was: Any amounts otherwise payable for damages under this coverage "shall be reduced by all sums: (1) Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. . . ." Our Supreme Court interpreted this language to limit the reduction only to the amounts paid for the claimant's bodily injury. The court's analysis turned on the phrase "the bodily injury." The court reasoned that the use

paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

of the word "the" as opposed to "a," "any" or "all" restricted the reduction of damages owed to the claimant to the claimant's bodily injury, not to any other person's bodily injuries. *Stephan* v. *Pennsylvania General Ins. Co.,* supra, 764; *Buell* v. *American Universal Ins. Co.,* supra, 770–71.

Contrary to Lenda's assertion, the language of the regulation is not similar to the language in the policies in *Stephan* and *Buell.* Section 38a-334-6 specifies that a reduction may be taken "to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury." On the other hand, the policy language in *Stephan* and *Buell* specifies that a reduction may be taken for "all sums . . . [p]aid because of the bodily injury. . . ." In the regulation, the phrase "the injury" relates to the person who paid or on whose behalf damages have been paid. While in *Stephan* and *Buell,* the phrase "the bodily injury" relates to the purpose for which the damages were paid.

Lenda also claims that the limit of coverage should not be reduced by the amounts paid for property damages. The language in the regulation does not limit the type of damages for which there may be a reduction. Generally, damages are defined as "pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights through the unlawful act or omission or negligence of another . . . ." Black's Law Dictionary (6th Ed. 1990). From our review of the language of the regulation, we conclude that the "damages" for which there may be a reduction of limits are not limited to bodily injury. Therefore, under the language of the regulation, damages paid for property damages as well as damages paid for bodily injury may be deducted for the purpose of reducing limits of coverage.

Under the terms and provisions of Lenda's insurance policy with Allstate, Allstate was entitled to reduce the amount owed to Lenda for underinsured motorist coverage by all amounts paid by or on behalf of Seymour to Lenda and to others for both bodily injury and property damages. The language of § 38a-334-6 of the Regulations of Connecticut State Agencies authorizes this type of policy provision.

## IV

Allstate's final claim is that the trial court improperly confirmed the arbitration award because it failed to order a setoff for collateral source recovery pursuant to General Statutes § 52-225a.[9] Subsequent to the arbitration of this case and the trial court review, our Supreme Court decided *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 624 A.2d 892 (1993), which is dispositive of this issue.

---

[9] General Statutes § 52-225a provides in pertinent part: "(a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

"A claimant is entitled to the full amount of his or her underinsured motorist coverage if, after the claimant's recovery from the tortfeasor has been reduced by collateral source payments in accordance with § 52-225a, the claimant's uncompensated personal and economic damages exceed the amount of the insurance coverage. A claimant's recourse to his or her underinsured motorist coverage is, however, limited in amount to less than his or her full coverage if the amount of the award against the tortfeasor for personal and economic damages, reduced in accordance with § 52-225a, results in uncompensated damages that are less than the full amount of the underinsured insurance coverage. In other words, while § 52-225a does not authorize collateral source payments to be deducted from a claimant's available underinsured motorist coverage, it does authorize such payments to enter into the calculation of the claimant's compensable injuries and losses." *Smith* v. *Safeco Ins. Co. of America,* supra, 225 Conn. 574.

Here, the arbitration panel did not specify the amount of Lenda's damages; it only indicated that the amount exceeded the limits of the underinsured motorist coverage. Thus, this matter must be remanded to the arbitration panel for a determination of Lenda's damages and a calculation of the final amount due Lenda consistent with this opinion.

The judgment is reversed as to the confirmation of the award with respect to the amount by which Allstate was allowed to reduce its underinsured motorist coverage, and the case is remanded with direction to render judgment modifying the arbitration award in part to allow a reduction by the full amount of liability coverage paid by or on behalf of Seymour to Lenda and to any other injured party both for bodily injury and property damage, and with further direction to remand the matter to the arbitration panel for a determination of

the precise amount of Lenda's damages and a calculation of the final amount due to Lenda consistent with this opinion.

In this opinion, FOTI, J., concurred.

LANDAU, J., dissenting. I respectfully dissent. The issue before us is not whether intrapolicy stacking is permitted in making the determination whether a motor vehicle is underinsured. Rather, the issue in this appeal is whether the failure of the arbitrators to conduct a factual inquiry into the reasonable expectations of the parties as it pertains to stacking renders the bald and unsupported conclusion that stacking was available deficient as a matter of law.

The majority begins its analysis by first examining General Statutes § 38a-336, the statute defining an underinsured motor vehicle, in accordance with the rule defined in *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 35–36, 594 A.2d 977 (1991). It then frames the issue to be decided as "whether intrapolicy stacking is permitted in making the initial determination of whether a motor vehicle is underinsured." It cites three Connecticut Supreme Court opinions concerning intrapolicy stacking, *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 446 A.2d 1059 (1982), *Farm & City Ins. Co.* v. *Stevens,* 215 Conn. 157, 574 A.2d 1300 (1990), and *Covenant Ins. Co.* v. *Coon,* supra, 30, and concludes "that when read together, although these cases do not permit interpolicy stacking to determine whether a motor vehicle is underinsured, they do permit intrapolicy stacking in making such a determination."[1]

---

[1] The issue of interpolicy stacking is not presented to this court in this case and the majority's pronouncement is of some concern to me in that such gratuitous statements often form the wadding for the cannons of the future. "What we cannot speak about we must pass over in silence." Wittenstein, Ludwig, Tractatus Logico-Philosopicus (1922). "I have often regretted my speech, never my silence." Pubilius Syrus, Maxim 1070 (First Century B.C.).

The majority then states in footnote 6: "After the briefs of the appellant and the appellee were filed, but before the appellant's reply brief was filed, our Supreme Court issued its opinion in *Kent* v. *Middlesex Mutual Assurance Co.,* 226 Conn. 427, 627 A.2d 1319 (1993). In *Kent,* the defendant argued that the claimant could not reasonably have expected intrapolicy stacking. The Supreme Court conducted an inquiry into the reasonable expectations of the parties in light of the individual facts and circumstances surrounding the insurance coverage. Id., 434. The court held that because (1) 'the named plaintiff signed the application for insurance immediately following the statement: "I understand and acknowledge that the limits of UNINSURED or UNDERINSURED MOTORIST COVERAGE are applicable ONCE per claim regardless of the number of vehicles or operators on the policy now or in the future" '; id., 435; (2) the policy itself contained basically the same language as the application regarding uninsured and underinsured motorist coverage; id.; (3) in their testimony the plaintiffs professed no expectation of stacked coverage; id., 434; and (4) the plaintiffs 'paid a single actuarially appropriate premium for underinsured motorist coverage on their own vehicles'; id.; the plaintiffs could not have had a reasonable expectation that their underinsured motorist coverage would be stacked. *Here, neither party argued or presented any evidence to the arbitration panel regarding the reasonable expectations of Lenda as to the total amount of underinsured coverage. Nor was any such argument made to this court. Therefore, we need not address this issue.*" (Emphasis added.)

The question of whether stacking is available is a mixed question of law and fact. An arbitration panel must inquire whether the reasonable expectations of the parties were consistent with an aggregation of

policy liabilities.[2] It is a prerequisite inquiry necessary to the maintenance of an underinsured motorist coverage action involving stacking. In this case, the absence of such an inquiry makes the arbitrator's ultimate conclusion—that stacking is available—deficient as a matter of law.

It is the very fact that there was *no* evidence presented to the arbitration panel regarding the reasonable expectations of the parties that forms the reason for my parting company with the majority. "The availability of stacking depends upon the reasonable expectations of the parties to the contract [of insurance]." *Kent* v. *Middlesex Mutual Assurance Co.,* supra, 226 Conn. 427, 437. The *Kent* court continues, *"As we have repeatedly held,* whether an insured may aggregate the limits of liability for underinsured motorist coverage depends upon the reasonable expectations of the parties." (Emphasis added.) Id., 438 n.14; see also *Cur-*

---

[2] "While General Statutes § 38-175c, the uninsured motorist statute, does not specifically address the issue of stacking coverage, we have repeatedly held that a fair reading of the statute discloses no prohibition against such aggregations. . . . The reason for this is the common sense notion that such a result falls within the reasonable expectations of the parties to the insurance contract. As one court has observed: Stacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more that one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere. *Travelers Ins. Co.* v. *Pac,* 337 So. 2d 397, 398 (Fla. App. 1976). This is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle, and a separate premium is charged for the coverage afforded to each of the described vehicles. See also *Tucker* v. *Government Employees Ins. Co.,* 288 So. 2d 238 (Fla. 1973). *Safeco Ins. Co.* v. *Vetre,* [174 Conn. 329, 334, 387 A.2d 539 (1978)]. *Nationwide Ins. Co.* v. *Gode,* supra, [187 Conn.] 395. Where two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums. *Yacobacci* v. *Allstate Ins. Co.,* [33 Conn. Sup. 229, 231, 372 A.2d 987 (1976)]. *Nationwide Ins. Co.* v. *Gode,* supra, 396." (Citations omitted; internal quotation marks omitted.) *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 529–30, 569 A.2d 541 (1990).

*ran* v. *Aetna Casualty & Surety Co.,* 222 Conn. 657, 669, 610 A.2d 1198 (1992); *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 672, 591 A.2d 101 (1991); *Middlesex Ins. Co.* v. *Quinn,* 27 Conn. App. 573, 582–83, 609 A.2d 1008 (1992), aff'd, 225 Conn. 257, 622 A.2d 572 (1993); *Broderick* v. *Ins. Co. of North America,* 25 Conn. App. 673, 675, 596 A.2d 18 (1991). Persevering with the lesson, our Supreme Court held that "[b]ecause there was substantial evidence to support the arbitrators' determination that the plaintiffs could not have had a reasonable expectation of stacked coverage; *Chmielewski* v. *Aetna Casualty & Surety Co.,* [supra, 660–61 n.15]; the trial court improperly granted the plaintiffs' application to vacate the arbitration award." *Kent* v. *Middlesex Mutual Assurance Co.,* supra, 439.

In *Kent,* the court has irrefutably clarified that an intrapolicy stacking determination requires an inquiry into the reasonable expectations of the parties in light of the individual facts and circumstances. Id., 437–39. The *Kent* court conducted such an inquiry, and determined that the language of the policy excluding coverage combined with the single actuarially appropriate premium for underinsured motorist benefits created a reasonable expectation of the parties that there would not be intrapolicy stacking. Id., 437.

The majority argues that because Allstate did not argue or present any evidence to the arbitration panel regarding the reasonable expectations of the parties as to the total amount of the coverage, and because no such argument was made before this court, we need not address this issue. It is well settled that "[o]n appeal, the scope of review of . . . a question [of law] is plenary . . . ." *Carbone* v. *Vigliotti,* 222 Conn. 216, 222, 610 A.2d 565 (1992). In conducting its review, this court is bound by the principle of stare decisis to adhere to precedent in deciding a legal issue. *State* v. *Somer-*

*ville,* 214 Conn. 378, 384–85, 572 A.2d 944 (1990). It is not new doctrine that a party cannot determine a legal issue merely by choosing to argue or not to argue.[3] *Kent* explicitly bases the availability of stacking on evidence consistent with the reasonable expectations of the parties. If no proof has been made, then, as a matter of law, stacking is unavailable.

I would reverse the judgment of the trial court and remand the matter with the direction to render judgment vacating the arbitration award.

---

[3] It is synonymous that if the parties to a contract action failed to argue that consideration was not present, a court would still be required to find that the contractual legal elements were satisfied. " '[I]t is the function of the courts to expound and apply governing principles of law.' [*State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717, 546 A.2d 830 (1988)]." *Foti* v. *Richardson,* 30 Conn. App. 463, 466, 620 A.2d 840 (1993).