The plaintiffs are the coadministrators of the estate of their daughter, Cheyenne Loika, who was fatally injured in a motor vehicle accident that occurred on April 6, 1990, in the town of Chester. Loika, with others, was a passenger in a 1984 Toyota pickup truck owned by Rose Benedetto and operated by Joel Cote. The accident resulted when Cote caused the vehicle to veer off the right side of Cedar Lake Road, a public highway in the town. The vehicle thereupon struck two trees and a utility pole, causing the plaintiffs' decedent to be thrown from the vehicle to her death.
Subsequent to the accident, the plaintiffs recovered $20,000 from the liability carrier that provided insurance to Benedetto as the owner of the offending vehicle. The sum received was the maximum allowable under the terms of the policy. Additionally, by way of settlement, the plaintiffs received $100,000 from the codefendant Allstate Insurance Company (Allstate) under the bodily injury liability provisions of a policy that insured Cote as the vehicle's operator. That sum, too, was the maximum amount allowable under the provisions of the policy.
In the present action the plaintiffs seek added benefits that they claim are due under the uninsured-underinsured *Page 61 
motorist provisions of their own auto policy with the defendant Aetna Casualty and Insurance Company (Aetna), as well as such benefits under the same or similar provisions of the Cote auto policy with Allstate. Each of the policies has uninsured-underinsured limits of coverage in the total amount of $200,000. Of that amount, Aetna has, under its policy, paid to the plaintiffs $80,000 in underinsured benefits.[1]
At trial the court received a stipulation as to the underlying facts that was executed by counsel for each of the parties. In addition to those facts contained in the court's recital above, the parties agreed to the following: "(1) [F]air, just, and reasonable damages to the plaintiffs as a result of all consequences flowing from the death of the decedent are `at least $400,000'; (2) [A]t the time of the accident Joel Cote operated the pick-up truck with the permission of the owner, but the truck was not available or furnished for his regular use or the use of his parents with whom he resided and to whom the Allstate policy was issued; (3) [I]f it is the court's finding that the underinsured coverage of the Allstate policy is available and applicable to the plaintiffs' claim, then such coverage would be primary and in the amount of $200,000, less off-sets and credits as determined by the court; and such coverage under the Aetna policy would be excess or secondary thereto; and (4) [I]f it is the court's finding that the underinsured coverage of the Allstate policy is not available or applicable to the plaintiffs' claim, then neither defendant owes any further policy benefits to the plaintiffs, and judgment in that event would enter in favor of both defendants."
The parties at trial also submitted what has been designated as joint exhibit no. 1. It is a document, executed by counsel on behalf of the parties, which is *Page 62 
entitled "Issues Submitted." Such issues are set forth in interrogatory form, and it is agreed that by answering the three questions presented, the court will have decided the disputed issues of the case. The issue-questions essentially are: (1) Whether the underinsured motorist coverage of the Allstate policy is available and applicable to the plaintiffs' claim; (2) If so, what offsets and credits which relate to the plaintiffs' claim should be applied to the limits of such coverage; and (3) Whether Aetna, by the terms of its policy of insurance issued to the plaintiffs; i.e., the $200,000 of underinsured motorist coverage thereunder; is entitled to a credit of all or part of the $120,000 of bodily injury benefits paid to the plaintiffs on behalf of the tortfeasors.
It is Allstate's position that its policy language precludes recovery by the plaintiffs. It argues that the plaintiffs' decedent does not fall within the definition of an insured person under the uninsured motorist provisions of its policy and it further urges that the offending vehicle was not an uninsured auto as that term is defined.
The critical policy language on which Allstate relies is: "We will pay those damages which an insured person
is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by an insured person." (Emphasis added.) The first issue to be addressed, then, is whether the plaintiffs' decedent was an insured person, and, if she was, whether the vehicle she occupied was "an uninsured auto."
An "insured person" under Allstate's uninsured motorist endorsement is defined in part as "[a]ny person while in, on, getting into or out of your insured auto with your permission." "Insured auto" is defined in part as "a motor vehicle . . . operated by you or your resident spouse with the owner's permission, but not furnished for your regular use." The latter definition *Page 63 
contrasts with that found under the bodily injury liability provisions of the same policy. There an insured auto includes "[a] non-owned auto used by you or a residentrelative with the owner's permission." (Emphasis added.)
Clearly, the language of Allstate's uninsured motorist endorsement is narrower than that found under the bodily injury liability provision. Joel Cote, the driver of the offending motor vehicle, although a resident relative, was not a resident spouse, and it is on this basis that Allstate disclaims uninsured motorist coverage. The plaintiffs, on the contrary, stress that it is not the policy definitions that control, but, rather, applicable insurance regulations, that carry the force of statutory law. Fidelity Casualty Co. v. Darrow, 161 Conn. 169,179, 286 A.2d 288 (1971). Specifically, they rely on §38a-334-6(a) of the Regulations of Connecticut State Agencies, which provides in relevant part: "(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shallinsure the occupants of every motor vehicle to whichthe bodily injury liability coverage applies. . . ." (Emphasis added.)
Obviously, Allstate does not dispute that the bodily injury liability policy it provided to the Cotes insured the Benedetto truck and the decedent as one of the occupants. If there were such a question, surely the company would not have paid $100,000 in bodily injury benefits to the plaintiffs. Bodily injury coverage being applicable, it is this court's finding that the second sentence of regulation § 38a-334-6(a) is controlling and *Page 64 
extends uninsured motorist coverage to the decedent as an occupant of the offending vehicle.[2]
Section 38a-336(a)(1) of the General Statutes requires that underinsured motorist coverage be provided "for the protection of persons insured thereunder." "`[P]ersons insured' in this statute refers to persons specified as insured in the liability portion of the policy." Middlesex Ins. Co. v. Quinn, 225 Conn. 257,264, 622 A.2d 572 (1993). In short, then, the plaintiffs' decedent, as an occupant of an insured vehicle, is an insured person under the bodily injury liability policy which Allstate provided to the Cotes, and the express language of the regulation also qualifies her as an insured under the uninsured motorist provisions of the same policy. As the Quinn court held, it would be a violation of public policy if "the insurance policy specifically were to limit underinsured motorist coverage in such a way as `to [preclude] persons who would otherwise qualify as insureds for liability purposes.'" Id., 264-65, quoting from Indiana Lumbermans MutualIns. Co. v. Vincel, 452 N.E.2d 418, 424 (Ind.App. 1983).
In addition to public policy considerations, "`an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as [§ 38a-334-6(d)] of the Regulations of Connecticut State Agencies expressly authorizes.'" Allstate Ins. Co. v.Lenda, 34 Conn. App. 444, 454, 642 A.2d 22, cert. denied,231 Conn. 906, 648 A.2d 149 (1994). Although bothSmith v. Nationwide Mutual Ins. Co., 214 Conn. 734,573 A.2d 740 (1990), and Lowrey v. Valley Forge Ins. *Page 65 Co., 224 Conn. 152, 617 A.2d 454 (1992), cases on which the defendant Allstate relies, involved the "owned vehicle" exclusion, such exclusion is expressly authorized by both the statute, General Statutes § 38a-336(a)(1), and regulations, Regs. Conn. State Agencies § 38a-334-6(c)(2)(A). No such exclusion is authorized for an occupant of an automobile insured under the bodily injury liability provisions of the policy. In short, as Judge Hodson succinctly pointed out, "[a] definition that limits coverage to an extent different from the coverage required by law is an exclusion of coverage that cannot be given effect. . . . [This is so because] [t]he effect of § 38a-336 is to prevent insurers from limiting the scope of uninsured/underinsured coverage to insureds other than in the ways authorized." Dunlop v. GovernmentEmployees Ins. Co., Superior Court, judicial district of New Haven, Docket Nos. 322973, 338304 (February 2, 1993) (8 Conn. L. Rptr. 347, 349).
Allstate argues that under the express language of its policy "an uninsured auto is not . . . (3) a motor vehicle insured for bodily injury liability under Part I of this policy." What is significant, however, is that this case concerns an underinsured vehicle. While the argument is made that uninsured has come to include underinsured in the context of insurance regulations; see General Accident Ins. Co. v. Wheeler, 221 Conn. 206,210-11, 603 A.2d 38 (1992); Allstate's own policy draws a distinction between the two forms of coverage under the "Limits of Liability" provisions. It is this distinction which removes an underinsured vehicle from the exclusionary language (above) on which the defendant relies. To do otherwise; i.e., to make an underinsured vehicle subject to the same exclusion; would ignore the policy distinction and create an ambiguity in the policy's definitions. In this connection, it is well settled that "[a] `limitation of liability on uninsured or underinsured motorist coverage must be construed *Page 66 
most strongly against the insurer'. . . . Furthermore, any ambiguity in policy language regarding coverage must be construed against the insurer." (Citation omitted).Chmielewski v. Aetna Casualty Surety Co.,218 Conn. 646, 675, 591 A.2d 101 (1991).
Even if the policy definition of uninsured were construed on its face to preclude coverage for the Benedetto vehicle, any such definition, as hereinbefore stated, cannot be permitted to take precedent over insurance regulations which require such coverage. "An insurer cannot limit otherwise mandated underinsured motorist coverage by labeling a forbidden exclusion as a definition."Middlesex Ins. Co. v. Quinn, supra, 225 Conn. 268. "[U]ninsured motorist coverage is `person oriented' and therefore must be provided to insureds while they are occupants of insured vehicles or uninsured vehicles."Smith v. Nationwide Mutual Ins. Co., supra,214 Conn. 738-39.
"Uninsured auto", as defined in defendant Allstate's policy of insurance, does not preclude coverage of the Benedetto vehicle.
Allstate argues additionally that the insurance regulations by their very terms do not apply under the facts of the case. The argument is premised on § 38a-334-4
of the regulations, that provides that "[t]hese regulations do not apply to the insurance afforded under any policy: (1) to the extent that the insurance afforded exceeds the limits specified in subsection (a) of § 14-112
of the general statutes . . . ." Because the Cotes' policy of insurance provided coverage of $100,000/$300,000 for bodily injury liability, such coverage far exceeded the $20,000/$40,000 bodily injury insurance required by § 38a-334-6. In short, this defendant argues that because its policy provides more than the statutorily mandated minimum amount of coverage for bodily injury liability, none of the regulations apply, regardless of subject matter. *Page 67 
This court rejects the argument, which is advanced without authoritative support. Section 38a-336(a)(1) of our statutes provides that "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . ." The intent of the statutory language is clear and is made even clearer by § 38a-334-3 of the regulations, which states that "[t]he provisions herein required need not be stated in the language or form of these regulations, but the coverage afforded shall be of equal or greater benefit to the insured." That providing uninsured motorist coverage in compliance with statutory requirement is made completely unnecessary when an insurer has provided insurance which exceeds the statutory minimum requirements for bodily injury liability coverage misconstrues the intent of the law and renders the regulations themselves essentially meaningless.
In this state an insurance policy, like any other contract, must be given a reasonable interpretation. AetnaCasualty Surety Co. v. CNA Ins. Co., 221 Conn. 779,786, 606 A.2d 990 (1992). Likewise, the insurance regulations should be considered in their entirety. To adopt the defendant's argument would constitute a rejection of these principles.
Both defendants raise issues regarding the amount and allocation of credits to which each claims to be entitled pursuant to § 38a-336(a)(2)(B) of the General Statutes and § 38a-334-6(d) of the insurance regulations. Both defendants also argue that the total coverage available to the plaintiffs should be $200,000.
It is Allstate's position that it is entitled to a credit not only of $120,000[3] already paid to the plaintiffs, but *Page 68 
$162,992.75 of additional bodily injury benefits paid to others injured in the same accident. In short, Allstate argues that it should be afforded a per accident credit for all moneys paid, rather than a per person credit based on the limits actually available and paid to the plaintiffs.
Allstate's policy defines its limits of coverage both as to each person and each accident. It is agreed that the limit of uninsured-underinsured coverage as to the plaintiffs is $200,000. Notwithstanding the bodily injury limitation ($100,000) placed on the amount that the plaintiffs can receive on behalf of their decedent individually, the defendant seeks credit not only for payments made to the plaintiffs, but also for payments not available to the plaintiffs which were made to others. In short, Allstate's claim is that it should be given a combined credit.
This claim flies in the face of established Supreme Court pronouncements: "Our uninsured motorist statute, § 38a-336, provides coverage for `persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured vehicles . . . .' (Emphasis added.) The coverage attaches to the insured person, not the insured vehicle." (Emphasis in original.)Harvey v. Travelers Indemnity Co., 188 Conn. 245, 248,449 A.2d 157 (1982); see also Covenant Ins. Co. v. Coon,220 Conn. 30, 34, 594 A.2d 977 (1991): "[I]t is consistent with our earlier interpretation of § 38a-336 to conclude that the total of the per person limit is the amount of liability insurance available to the claimant . . . ." Cf.Allstate Ins. Co. v. Lenda, supra, 34 Conn. App. 452-53: "The policy language limiting coverage states that `all amounts paid' will be used to reduce the limits of the coverage . . .' [not merely] sums paid only to the claimant." (Emphasis added.)
In short, unless the policy language is unambiguously to the contrary (e.g., Lenda), the relevant consideration, *Page 69 
then, is the total of the liability coverage available to the individual claimant, and not those amounts paid to other individuals which were unavailable to the claimant. The amount of the credit due under Sec. 38a-334-6(d) does not include the $162,992.75 of bodily injury liability benefits paid by Allstate under the split limit coverage of its policy with the Cotes. The maximum amount that the plaintiffs could receive is $100,000, the per person limit, and that amount plus $20,000 received under the Benedetto policy is the extent of the credit which Allstate should be given.
The defendants are in dispute as to the allocation of the $120,000 credit. The defendant Aetna argues that (1) both carriers should receive a credit of $120,000 or (2) that sum should be equally divided between them. Allstate, on the contrary, argues that if the credit is limited to the above amount, it is entitled the full amount as the primary carrier.
This court rejects Aetna's claim that, in effect, a double credit should be applied. The chief concern in reconciling disputes as to amount and priority of payments between insurers is the avoidance of compromising coverage for the insured. Aetna Casualty Surety Co.v. CNA Ins. Co., supra, 221 Conn. 783. If policy provisions allowing deductions of uninsured motorist limits compromises the insured's coverage, then such provisions are not enforceable. Dunlop v. GovernmentEmployees Ins. Co., supra, 8 Conn. L. Rptr. 350. It seems quite illogical in light of this underlying philosophy to allow to the underinsurance carriers a credit of $240,000 for bodily injury liability payments when only $120,000 was actually paid to the plaintiffs.
Furthermore, § 38a-334-6(d)(1) of the regulations provides in pertinent part that "the policy may provide for the reduction of limits to the extent that damageshave been . . . paid by or on behalf of any person *Page 70 responsible for the injury . . . ." (Emphasis added.) Quite clearly, any reduction must be for an amount actually received by the claimant.
It is generally recognized that when one policy is primary and one is excess, as here, "[a] primary carrier has the first claim to certain available reductions, which could completely offset the primary uninsured motorist carrier's obligation to pay benefits." P. Morello J. Donovan, Handbook of Connecticut Uninsured and Underinsured Motorist Law (1993) p. 40. This is only fair since the secondary insurer is liable only for the amount the claimant is entitled to receive over the maximum coverage of the primary insurer. Pecker v. Aetna Casualty Surety Co., 171 Conn. 443, 453, 370 A.2d 1006
(1976); Englehardt v. New Hampshire Ins. Group,36 Conn. Sup. 256, 261, 417 A.2d 366 (1980).
That Allstate should receive a credit of $100,000 which it paid under the terms of its bodily injury liability coverage seems hardly subject to question, and there seems no sound reason, as well, why it should not, as primary carrier, receive the additional $20,000 credit for liability benefits otherwise received by the plaintiffs. By fashioning this result the defendant Aetna is treated as an excess carrier, which is exactly what it bargained for. Its liability attaches only to the extent of the excess loss above the primary insurer's uninsured coverage. Some other pro rata division of deductions would be inconsistent with its role.
Defendant Aetna, in urging that the plaintiffs' recovery should be limited to $200,000, asserts that this amount was the actual amount of uninsured coverage that the plaintiffs purchased, and to allow a recovery of twice that sum is inequitable and "give[s] the plaintiffs far more than they bargained for." In advancing its argument Aetna ignores the accepted practice of stacking coverages provided in uninsured-underinsured motorist policies *Page 71 
whose limits exceed applicable bodily injury liability limits.
The Supreme Court has held that there is no prohibition against stacking coverages pursuant to § 38a-336
of the General Statutes. The practice has received approval whether, as here, it is interpolicy stacking, involving separate policies that are applicable to the same claim; Cohn v. Aetna Ins. Co., 213 Conn. 525, 528,569 A.2d 541 (1990); or intrapolicy stacking, involving more than one vehicle insured under the same policy.Allstate Ins. Co. v. Lenda, supra, 34 Conn. App. 450. Likewise, there is no distinction as to whom the right is afforded, whether the stacking beneficiary be the policyholder who has purchased such coverage or a mere vehicle occupant who has not. Allstate Ins. Co.v. Ferrante, 201 Conn. 478, 484-85, 518 A.2d 373 (1986).
Aetna's added argument, that to allow the plaintiffs to recover under its policy would violate a long-standing rule that prohibits an insured's recovery of double damages by virtue of overlapping insurance coverage, is inapposite. See Pecker v. Aetna Casualty Surety Co.,
supra, 171 Conn. 452. The present case is not one of double payment, but rather one of implementation of public policy which underlies the uninsured motorist statute; viz., that "every insured is entitled to recover for the damages he or she would have been able to recover if the [under]insured motorist had maintained a policy of [adequate] liability insurance." Rydingswordv. Liberty Mutual Ins. Co., 224 Conn. 8, 18,615 A.2d 1032 (1992), quoting Harvey v. Travelers IndemnityCo., supra, 188 Conn. 249.
Moreover, if the damages sustained by the plaintiffs are at least $400,000, as the parties have agreed, how can it be claimed that resort to the Aetna policy allows the plaintiffs to recover double damages? *Page 72 
In conclusion the court decides the issue-questions presented by the parties as follows: (1) the underinsured motorist coverage of the Allstate policy is available and applicable to the plaintiffs' claim; (2) the defendant Allstate should receive a credit of $120,000 against the $200,000 limits of its uninsured/underinsured motorist coverage; and (3) the defendant Aetna is not entitled to a credit of all or any part of the $120,000 paid to the plaintiffs.
 In accordance with this opinion judgment may enter in favor of the plaintiffs to recover of the defendant Aetna Casualty and Surety Company $120,000 damages and of the defendant Allstate Insurance Company $80,000 damages.