[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT
This matter comes before the court as a result of a demand made upon the defendant, Allstate Insurance Company, for payment under the underinsured motorist portion of the plaintiff's insurance policy. The facts disclose that the plaintiff's decedent, Helen Reznik, was a passenger in a motor vehicle owned and operated by her sister-in-law, Pearl Reznik. The parties were not blood relatives nor did they reside in the same household.
On April 12, 1993, there was a one car accident involving the motor vehicle owned and operated by Pearl Reznik resulting in the death of Helen Reznik. On said date the motor vehicle, a 1977 Chevrolet Monte Carlo, was insured by the defendant. In addition, there was another 1977 Chevrolet listed on the policy.
The policy provided for Basic Reparations in the total amount of $5,000. The subject policy also provided for liability insurance coverage with a limit of $50,000 per person and $100,000 per occurrence. Furthermore, the subject policy provided for $50,000 per person and $100,000 per occurrence of uninsured/underinsured motorists benefits for each of the two vehicles described therein.
The defendant paid the Basic Reparations portion of the policy, and, after demand was made on the liability coverage of the policy, paid the sum of $50,000 as part of the full and final satisfaction of all liability claims arising from the incident.
The plaintiff, on behalf of the estate of Helen Reznik, then brought this action making demand upon the defendant under the CT Page 4601 uninsured/underinsured motorist portion of the policy.
On January 29, 1997, the defendant filed a motion for summary judgment and a memorandum in support. On February 3, 1997, the plaintiff filed his own motion for summary judgment on the issue of liability only, and on March 11, 1997, filed a memorandum in support of his motion and in opposition to the defendant's motion for summary judgment. On May 9, 1997, the court, Flynn, J., denied both motions for summary judgment due to insufficient information before the court to decide either motion.
On May 23, 1997, the plaintiff filed a motion to reargue, pursuant to Practice Book § 204B, on the basis that the parties could cure the factual insufficiency recognized by the court by jointly stipulating to the relevant facts and providing the relevant information to allow the court to decide the motions. On June 9, 1997, the court, Flynn, J., denied the motion.
On August 7, 1997, the parties filed a stipulation of facts relating to the underlying incident. The parties stipulated to the above rendition of the facts of the incident. In addition, the parties stipulated that, should the court find that there is coverage, (1) the policy provides for stacking so that the underinsured motorist benefits would amount to $100,000, (2) the defendant is entitled to a credit of $5,000 for Basic Reparations paid, (3) the defendant is entitled to a credit of $50,000 paid under the liability provision of the policy, and (4) that the damages sustained by the decedent exceed the available amount of underinsured motorist coverage and accordingly judgment may enter in favor of the plaintiff and against the defendant in the amount of $45,000.
On September 16, 1997, the case was stricken from the jury trial list and referred to Curran, J., for trial. Oral argument was held on October 31, 1997.
"Practice book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Thompson Peck, Inc. v. Division Drywall, Inc.,241 Conn. 370, 374, 696 A.2d 326 (1997). "Although the moving party CT Page 4602 has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. . . . [S]ee Practice Book §§ 380 and 381." (Internal quotation marks omitted.) Beers v. Bayliner MarineCorp., 236 Conn. 769, 771 n. 4, 675 A.2d 829 (1996). "To oppose a motion for summary judgment successfully the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.)Connecticut National Bank v. Great Neck Development Co.,215 Conn. 143, 148, 574 A.2d 1298 (1990).
Because the parties have stipulated to the pertinent facts in the case, the Court finds it appropriate to decide the case on the motions for summary judgment, since the question of whether a non-owner, non-policyholder, occupant-passenger in a single-vehicle accident can collect under both the bodily injury liability portion of an insurance policy and the underinsured motorist coverage of the same policy is one of law.
The defendant relies on Lowrey v. Valley Forge Ins. Co.,224 Conn. 152, 617 A.2d 454 (1992), in support of its argument that the plaintiff may not recover under the underinsured motorist portion of the policy. In Lowrey, the plaintiffs were passengers in a car owned and operated by one Alfreda Kozlowski which was involved in a one car accident. Id., 154. The plaintiffs, who were not residents of Kozlowski's household, were injured in the accident and sought recovery under an automobile insurance policy issued to Kozlowski by the defendant. Id. The policy, covering two automobiles owned by Kozlowski, provided single-limit liability coverage for each car in the amount of $100,000, and underinsured motorist coverage for each car in the amount of $100,000. Id. The defendant paid $100,000 to the plaintiffs under the liability portion of the policy, thus exhausting the liability coverage, but refused to pay on the plaintiffs' underinsured motorist claims based on a policy exclusion which provided: "`[U]ninsured motor vehicle' does not include any vehicle or equipment: 1. Owned by or furnished or available for your regular use." Id.
The court determined that the plain language of the exclusion indicated that the exclusion applied to the Kozlowski vehicle, and, "[t]hus, the vehicle was not an `uninsured motor vehicle' under the policy." Id., 156. Additionally, the court determined that the Regulations of Connecticut State Agencies § 38-175a-6 (c)(2)(A) (now § 38a-334-6 (c)(2)(A)) specifically authorized such an CT Page 4603 exclusion. Lowrey v. Valley Forge Ins. Co., supra, 224 Conn. 156-57. Section 38-175a-6 (c)(2)(A) provided, in pertinent part: "The insurer's obligations to pay may be made inapplicable . . . (2) if the uninsured motor vehicle is owned by (A) the named insured or any relative who is a resident of the same household or is furnished for the regular use of any of the foregoing." Regs., Conn. State Agencies § 38-175a-6 (c)(2)(A) (now § 38a-334-6 (c) (2)(A)).
According to the Lowrey court, "`[l]iability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle. Underinsured coverage, however, is intended to protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile. . . . An insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage; allowing underinsured coverage in the instant case would, in essence, be allowing an individual to increase liability coverage by purchasing less expensive underinsured coverage.'" (Citation omitted; internal quotation marks omitted.) Lowery v.Valley Forge Ins. Co., supra, 224 Conn. 157-58, quoting Meyer v.Illinois Farmers Ins. Group, 371 N.W.2d 535, 537 (Minn. 1985).
In addition, the court noted that "`[u]nderinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the [plaintiffs] have already collected under the liability coverage of the insurer of the [Kozlowski] car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.'" Lowrey v. Valley Forge Ins. Co., supra,224 Conn. 158, quoting Myers v. State Farm Mutual AutomobileIns. Co., supra.
The plaintiff in the present action relies on Loika v. AetnaCasualty Surety Co., 44 Conn. Sup. 59, 667 A.2d 1308, aff'd per CT Page 4604 curiam, 39 Conn. App. 714, 667 A.2d 78 (1995), cert. denied,236 Conn. 902, 670 A.2d 322 (1996), in support of his position that the estate of Helen Reznik may recover underinsured motorist benefits under the policy, even after recovering under the liability portion. In Loika, the plaintiffs' decedent was a passenger in an automobile owned by one Rose Benedetto and operated by Joel Cote, who was Benedetto's resident son. Loika v. Aetna Casualty SuretyCo., supra, 44 Conn. Sup. 60-61. The plaintiffs' decedent was killed in a one car accident. Id., 60. The plaintiffs recovered $20,000 from the liability carrier that provided insurance to Benedetto as owner of the subject automobile, and $100,000 from Allstate Insurance Company ("Allstate") under the bodily injury liability provisions of a policy that insured Cote as the vehicle's operator; both recoveries were the maximum allowable amounts under the respective policies. Id.
The plaintiffs sought to recover additional benefits under the uninsured/underinsured motorist provisions of the Allstate policy, which had an uninsured/underinsured limit of coverage of $200,000.Id., 60-61.[1] The parties stipulated prior to trial, inter alia,
that (1) the plaintiffs' damages were at least $400,000; (2) Cote operated the vehicle with the permission of his parents (the vehicle's owners), but the vehicle was not available or furnished for his regular use or the use of his parents; and (3) if the court found that underinsured coverage of the Allstate policy was not available or applicable to the plaintiffs' claims, neither defendant would owe any further policy benefits, and judgment would enter for the defendants. Id., 61.
The court determined that the plaintiffs' decedent was an "insured person" under Allstate's uninsured motorist endorsement and that the subject vehicle was an "insured auto" under the endorsement. Id., 62-64. "Insured person" was defined in the policy as "[a]ny person while in, on, getting into or out of your insured auto with your permission." Id., 62. "Insured auto" was defined in the policy as "a motor vehicle . . . operated by you or your resident spouse with the owner's permission, but not furnished for your regular use." Id. Although the definition of "insured person" in the uninsured/underinsured motorist portion of the policy did not cover Cote, the court held that § 38a-334-6 (a) of the Regulations of Connecticut State Agencies mandated that Cote nevertheless be covered. Id., 63. Section 38a-334-6 (a) provides: "(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor CT Page 4605 vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverageshall insure the occupants of every motor vehicle to which thebodily injury liability coverage applies." (Emphasis in original.)Loika v. Aetna Casualty Surety Co., supra, 44 Conn. Sup. 63.[2]
Moreover, the court indicated that General Statutes § 38a-336 (a) (1), which requires that underinsured motorist coverage be provided "for the protection of persons insured thereunder," mandated that the plaintiffs' decedent be covered as an insured person under the uninsured motorist portion of the policy. Loika v. Aetna Casualty Surety Co., supra, 44 Conn. Sup. 64, citing Middlesex Ins. Co. v.Quinn, 225 Conn. 257, 264, 622 A.2d 572 (1993) ("`[P]ersons insured' in this statute refers to persons specified as insured in the liability portion of the policy.").
The court then exhaustively analyzed the policy exclusion upon which Allstate relied, which provided: "[A]n uninsured auto is not . . . (3) a motor vehicle insured for bodily injury liability under Part I of this policy." Loika v. Aetna Casualty Surety Co.,supra, 44 Conn. Sup. 65. The court noted that "[i]n addition to public policy considerations, `an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as [§ 38a-334-6 (d)] of the Regulations of Connecticut State Agencies expressly authorizes.' Allstate Ins. Co. v.Lenda, 34 Conn. App. 444, 454, 642 A.2d 22, cert. denied,231 Conn. 906, 648 A.2d 149 (1994). Although both Smith v.Nationwide Mutual Ins. Co., 214 Conn. 734, 573 A.2d 740 (1990), andLowrey v. Valley Forge Ins. Co., 224 Conn. 152, 617 A.2d 454
(1992), cases on which the defendant Allstate relies, involved the `owned vehicle' exclusion, such exclusion is expressly authorized by both the statute, General Statutes § 38a-336 (a)(1), and regulations, Regs. Conn. State Agencies § 38a-334-6 (c)(2)(A). No such exclusion is authorized for an occupant of an automobile insured under the bodily injury liability provisions of the policy. In short, . . . [a] definition that limits coverage to an extent different from the coverage required by law is an exclusion of coverage that cannot be given effect. . . . [This is so because] [t]he effect of § 38a-336 is to prevent insurers from limiting the scope of uninsured/underinsured coverage to insureds other than in the ways authorized." (Internal quotation marks omitted.) Loika v.Aetna Casualty Surety Co., supra, 44 Conn. Sup. 64-66.
In response to Allstate's argument that the policy language applied to exclude "a motor vehicle insured for bodily injury liability under Part I of [the] policy" from being an uninsured CT Page 4606 auto, the court commented that
 [w]hat is significant . . . is that this case concerns an underinsured vehicle. While the argument is made that uninsured has come to include underinsured in the context of insurance regulations; see General Accident Ins. Co. v. Wheeler, 221 Conn. 206, 210-11, 603 A.2d 38 (1992); Allstate's own policy draws a distinction between the two forms of coverage under the "Limits of Liability" provisions. It is this distinction which removes an underinsured vehicle from the exclusionary language (above) on which the defendant relies. To do otherwise; i.e., to make an underinsured vehicle subject to the same exclusion; would ignore the policy distinction and create an ambiguity in the policy's definitions. In this connection, it is well settled that "[a] limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer. . . . Furthermore, any ambiguity in policy la nguage regarding coverage must be construed against the insurer." (Citation omitted.) Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 675, 591 A.2d 101 (1991).
 Even if the policy definition of uninsured were construed on its face to preclude coverage for the Benedetto vehicle, any such definition, as hereinbefore stated, cannot be permitted to take precedent over insurance regulations which require such coverage. "An insurer cannot limit otherwise mandated underinsured motorist coverage by labeling a forbidden exclusion as a definition." Middlesex Ins. Co. v. Quinn, supra, 225 Conn. 268. "[U]ninsured motorist coverage is `person oriented' and therefore must be provided to insureds while they are occupants of insured vehicles or uninsured vehicles." Smith v. Nationwide Mutual Ins. Co., supra, 214 Conn. 738-39. (Internal quotation marks omitted.)
Loika v. Aetna Casualty Surety Co., supra,
44 Conn. Sup. 64-66.
The circumstances of the present case are much closer to the circumstances involved in Loika than those involved in Lowrey
Specifically, the policy language in the present case appears to be identical to, or at least very similar to, the policy language inLoika, as the policies were issued by the same insurer, Allstate. The exclusion at issue in both the present case and Loika is identical: "[A]n uninsured auto is not . . . (3) a motor vehicle insured for bodily injury liability under Part I of this policy." See Loika v. Aetna Casualty Surety Co., supra, 44 Conn. Sup. 65; Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit C. The exclusion at issue in Lowrey, on the other hand, provided: "`[U]ninsured motor vehicle' does not include any vehicle or equipment: 1. Owned by or furnished or available for CT Page 4607 your regular use." Lowrey v. Valley Forge Ins. Co., supra,224 Conn. 154. The court in Lowrey held that this policy exclusion was expressly authorized by the insurance regulations. See Regs., Conn. State Agencies § 38-175a-6 (c)(2)(A) (now § 38a-334-6 (c) (2)(A)). The court in Loika determined that the policy exclusion at issue before it was not expressly authorized by the regulations, unlike the "owned vehicle" exclusion at issue in Lowrey, and in fact was prohibited by the regulations; see Regs., Conn. State Agencies § 38a-334-6 (a) (uninsured motorist coverage "shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies"); and by the statute. See General Statutes § 38a-336 (a)(1); Loika v. Aetna Casualty Surety Co.,supra, 44 Conn. Sup. 64 ("[U]nderinsured motorist coverage [shall] be provided [under § 38a-336 (a)(1) `for the protection of persons insured thereunder.' `Persons insured' in this statute refers to persons specified as insured in the liability portion of the policy." (internal quotation marks omitted)).
Therefore, Loika is more authoritative to the present circumstances than Lowery because Lowrey addressed different policy provisions under different policy language than that at issue in the present action. "When an insurer seeks to limit its liability for uninsured or underinsured motorist coverage based on the [regulations] . . . it may do so only to the extent that the regulation expressly authorizes. . . . Similarly, where an insurer seeks to limit its liability based on the statute itself, rather than on the regulation, it should only be permitted to do so to the extent that the statute expressly authorizes." Chmielewski v.Aetna Casualty Surety Co., supra, 218 Conn. 674. The court inLoika treated a policy exclusion, which is identical to that in the present case, differently than courts treat an "owned vehicle" exclusion because the "owned vehicle" exclusion is expressly authorized under the regulations, while the policy exclusion at issue in Loika and the present case is not.
In addition, in Loika the court recognized that the policy at issue made a distinction between uninsured motorist coverage and underinsured motorist coverage under the "Limits of Liability" provisions of the policy, such that the two were not interchangeable concepts as courts have come to construe them in the context of the insurance regulations because using them interchangeably would create an ambiguity in the policy. See Loikav. Aetna Casualty Surety Co., supra, 44 Conn. Sup. 65. Similarly here, the "Limits of Liability" provisions of the uninsured motorist coverage portion of the present policy distinguish between CT Page 4608 coverage limits for accidents involving uninsured motor vehicles and underinsured motor vehicles. Policy endorsement AU1697-5, p. 6-7, provides, in pertinent part:
Limits of Liability
. . . .
The limits of this coverage will be reduced by:
1. all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage of this or any other policy. . . .
If the accident arises from the use of an underinsured motor vehicle, we aren't obligated to make any payment under this coverage until the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.
Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit C.
Because "[a] limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer"; (internal quotation marks omitted)Chmielewski v. Aetna Casualty Surety Co., supra, 218 Conn. 675; and because "any ambiguity in policy language regarding coverage must be construed against the insurer"; id.; the court must find in favor of coverage under the policy. In addition, the "owned vehicle" exclusion, while possessing essentially the same effect as the present policy exclusion under the present circumstances, is nevertheless different than the present exclusion, and the superior court's reasoning in Loika — which was adopted in full by the appellate court and which the Connecticut Supreme Court declined to hear on appeal — is controlling and is not "in contravention with [stare] decisis" as argued by the defendant.
In conformity with the appellate court's ruling in Loika v.Aetna Casualty Surety Co., supra, 39 Conn. App. 714, the court rules that there is coverage under the policy for underinsured motorist benefits and therefore denies the defendant's motion for summary judgment and grants the plaintiff's motion for summary judgment. Per the stipulation agreement between the parties, this coverage amounts to $100,000, with credits of $5,000 for Basic Reparations paid and $50,000 for payment made under the bodily injury liability portion of the policy. Thus, the total underinsured CT Page 4609 motorist benefits to which the plaintiff is entitled is $45,000.
CURRAN, S.T.R.