[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The first issue presented by defendants' Bonnie Pratt and Shana Cantoni, motion to reduce verdict, is whether disability benefits received by the plaintiff from disability insurance are collateral source payments pursuant to General Statutes §52-225a and 52-225b. CT Page 12962
There is no appellate court ruling on this issue although there are two superior court decisions that hold that disability benefits are considered collateral source payments. See Disantisv. Allstate Insurance Co., Superior Court, judicial district of Litchfield, Docket No. 72255 (May 5, 1999, Sheedy, J.); Arkenboutv. Ryan, Superior Court, judicial district of New Haven at New Haven, Docket No. 331859 (May 3, 1996, Hodgson, J.). In Disantisv. Allstate Insurance Co., supra, the court found that because disability benefits were included in the common law collateral source rule and the legislature did not specifically exclude these benefits when promulgating §§ 52-225a and 52-225b, which abolished the common law rule, the legislature therefore intended that disability insurance be included in the "other similar insurance benefits" language of § 52-225b. The court stated that "while C.G.S. §§ 52-225a and 52-225b abolished the common law collateral source rule and are therefore in derogation of the common law, C.G.S. § 52-225b(1) specifically exempts from `any other similar insurance benefits' only life insurance benefits. While it is an axiom of statutory construction that legislative intent is determined by analyzing the actual language employed and that one cannot attach meaning to silence, what is certain is that, in enacting this statutory scheme, the legislature did in fact consider whether there should be exceptions to those kinds of insurance benefits it intended would constitute collateral sources for which reductions from damage awards were appropriate and, having answered that question in the affirmative, it did not exempt disability insurance payments." The court went on to examine the definitions of "disability" and "benefit" and determined that the ordinary meaning of these words clearly include disability benefit payments as "other similar insurance benefits."
In Arkenbaut v. Ryan, supra, the court found that disability benefits were collateral source payments. The court stated that "[t]he purpose of the abolition of the collateral source rule in the legislation known as `Tort Reform I and II' was to prevent plaintiffs from recovering twice for the same economic losses: once from collateral sources such as health and disability insurance coverage and again from the tortfeasor. A result of this change in the law is that adjudged tortfeasors obtain a reduction in the amounts of compensation they must pay injured plaintiffs . . . in effect shifting part of the cost of the loss caused by the tortfeasor to third parties, such as providers of health and disability insurance benefits." The court, however, CT Page 12963 concluded that the defendant had failed to prove that the jury did not consider the evidence presented indicating that the plaintiff had received disability benefits when it determined the amount of damages for lost income. The court, therefore, refused to apply a collateral source deduction.
Neither of the above cases provide a thorough analysis of the legislative history of the Tort Reform I and II Acts. There was much debate regarding amendment House B of House Bill 5364. The amendment House B sought to amend House Bill 5364 by removing the words "disability," "income" and "disability coverage." 28 H.R. Proc., Pt. 27, 1985 Sess., p. 9828. The debate focused on the removal of disability benefits as collateral source payments because the proponents of the amendment did not think that income disability, sick leave, vacation leave and pension payments should be included as collateral source payments. Representative Wenc stated that the amendment "would exclude payments of wages while the injured party is disabled." 28 H.R. Proc., supra, p. 9837. He continued by saying that "unless these items I've just mentioned are excluded, then the amount of damages that are owed to the injured victim as a result of let's say a doctor's negligence, would be reduced by the amount that individual receives from the independent source, whether it's income disability, sick leave, vacation leave or pension payments. I think that's unfair." Id. Later, he stated that "the philosophy underlying the collateral source rule is that the loss has occurred because of the doctor's wrongdoing, his negligence, his carelessness, and whatever medical services, wages or pension benefits the injured party receives should go to the benefit of the injured party, and should not go to the benefit of the wrongdoer." Id., p. 9839. Additionally, the following dialogue between Representative Fox and Representative Wollenberg took place:
Rep. Fox: (144th)
 Through you, Mr. Speaker. Rep. Wollenberg, is it not true that in many instances one does not know what weight or lack thereof a given jury would give to the issue of income or los income?
Speaker Van Norstrand:
Rep. Wollenberg. CT Page 12964
Rep. Wollenberg: (21st)
 Through you, Mr. Speaker, that's correct. Only if I could know.
Speaker Van Norstrand:
Rep. Fox.
Rep. Fox: (144th)
 Through you, Mr. Speaker, then does it not follow that unless we have this amendment, it is quite possible that we would be deducting from a jury verdict dollars to which a jury gave no verdict for an award?
Speaker Van Norstrand:
Rep. Wollenberg.
Rep. Wollenberg: (21st)
Through you, Mr. Speaker, that's correct.
Speaker Van Norstrand:
Rep. Fox.
Rep. Fox: (144th)
 Through you, Mr. Speaker, I think those answers indicate the importance of this amendment, because without it we could be deducting from the recovery a plaintiff receives, money which is a practical matter that he or she was never awarded.
These discussions clearly indicate that the legislature did not intend disability benefits to be included as collateral source payments. "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." Glastonbury Co. v. Gillies,209 Conn. 175, 183-84, 550 A.2d 8 (1988)
The legislative history is most persuasive and this court CT Page 12965 will not include in the language of § 52-225b a meaning which the legislature specifically rejected.
The second issue is whether the offset of the costs of maintaining insurance against collateral source payments should be the premiums for only the months in which the plaintiff obtained medical treatment or the annual premiums. In Mancini v.Ansonia Derby Water Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 300095 (June 29, 1995, Hodgson,J.), the court addressed the issue of whether the insurance premiums for months in which the plaintiff did not receive treatment should be allowed to offset the collateral source benefits. The court stated that "[o]n its face, the statute does not confine the offset of costs against benefits to those months in which benefits were in fact received. The defendant has not demonstrated that the medical coverage at issue was available in one-month coverage increments or that a plan member could opt out for a period and then re-enroll to obtain coverage for additional treatment for an injury arising before the date of reinstatement. Absent a showing that the plaintiff did not have to maintain coverage between treatments in order to be covered for later treatments, the court concludes that the annual premiums for medical coverage for the years in which the collateral source payments were received by the claimant, constitutes the amounts paid under subsection(c) of General Statutes § 52-225a to secure her right to medical benefits over the period she received them for the injury at issue. It is the very nature of insurance and other benefit programs that enrollment prior to a covered claim gives rise to the entitlement to receive benefits. Accordingly, amounts paid to maintain coverage over a period of time can be fairly [said] to have been paid `to secure [the claimant's] right to any collateral source benefit which [she] has received as a result of such injury' within the meaning of subsection (c) of § 52-225a." See also Hertz v. Nicotra, Superior Court, judicial district of New London at Norwich, Docket No. 114764 (May 24, 1999, Mihalakos, J.). Accordingly, the plaintiff is allowed an offset for the medical insurance premiums for the contiguous months she received treatment starting in April of 1996 until the month the plaintiff completed treatment.
So ordered.
Thomas G. West, J. CT Page 12966