[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO REDUCE VERDICT IN ACCORDANCE WITH CONNECTICUT RULES OF COURT § 16-35 AND 16-36
This underinsured motorist action was tried before this court and a jury verdict rendered on June 27, 2002. Subsequently, the defendant motioned this court to reduce the verdict in accordance with Connecticut Practice Book § 16-35 and 16-36, Connecticut Regulations §38a-334-6, Connecticut General Statute § 38a-336, as well as the provisions of the underinsured motorist policy issued by the defendant, Providence Washington Insurance Co., which were in effect at the time of the motor vehicle collision. The parties filed memorandums of law and the court heard argument on this motion on August 29, 2002.
Facts
On September 11, 1997, the plaintiff, Edward Dillon, Jr., was riding as a passenger in a car which was owned by Edward J. Dillon Sons, a family business for whom the plaintiff was employed. The plaintiffs brother, Robert Dillon, who also worked in the family business, was the driver of the vehicle when it was rear-ended by the tortfeasor vehicle. Both Edward and Robert Dillon suffered injuries as a result of the collision.
The plaintiff and his brother each settled claims against the tortfeasor for $20,000.00, exhausting the tortfeasor's policy. Edward J. Dillon, Jr. and Robert Dillon then proceeded against the defendant, Providence Washington Insurance Company, for damages pursuant to the Underinsured Coverage provision of a Commercial Auto Policy issued to Edward J. Dillon Sons Flower Gift Shop by the defendant. The defendant settled Robert's claim for $100,000.00. Edward filed this action against Providence Washington Insurance Company, with a return date of May 4, 1999. The plaintiff filed an Offer of Judgment for $750,000.00 on March 21, 2001. The defendant filed an Offer of Judgment on May 15, 2002, in the amount of $550,000.00. The damage claim of Edward
CT Page 13962
was tried before a jury, which returned a verdict for the plaintiff in the amount of $588,000.00 in economic damages and $459,400.00 in non-economic damages.
Relying on the language of the Commercial Auto Policy, the defendants argue that the verdict should be reduced by certain amounts paid to both Edward and Robert subsequent to the date of the collision as well as by worker's compensation awards that Edward may receive in the future. Section D, Subsection I of the policy provides:
Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for UNINSURED MOTORISTS COVERAGE shown in the Schedule or Declarations."
Also relevant to the issues here are the provisions of Section D, Subsection 2 of the policy which states:
The Limit of Insurance shall be reduced by:
a. All sums paid or payable under any worker's compensation, disability benefits or similar law; and
b. All sums paid by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.
During oral argument on this motion, the parties stipulated to the following:
a) the limit of liability on the applicable policy is $1,000,000.00 (combined single limit).
b) $20,000.00 was paid to the plaintiff, Edward Dillon, Jr., on behalf of the defendant, Paul Dillon and Pilgrim Insurance.
c) $20,000.00 was paid to Robert Dillon on behalf of the defendant, Paul Dillon, and Pilgrim Insurance.
d) $100,000.00 was paid to Robert Dillon by the defendant, Providence Washington Insurance Company, in settlement of his separate lawsuit for underinsured motorist benefits.
e) Robert Dillon received $63,905.27 in Worker's Compensation benefits. of that amount $3,835.73 was for medical payments; $50,000.00
CT Page 13963
was paid to "stip out" the Worker's Compensation case; and $10,069.54 was paid for permanent partial disability. Robert reimbursed the Worker's Compensation carrier $12,680.35.
f) Edward Dillon, Jr. received $139,809.66 in Worker's Compensation benefits. of that amount $64,220.10 was for medicals and $75,589.56 was payment for various benefits, including permanent partial disability, temporary total disability and earning capacity losses. Edward Dillon, Jr. reimbursed the Worker's Compensation carrier $6,913.82.
Moreover, the plaintiff acknowledges that there are three types of reductions from the underinsured policy limit of $1,000,000.00 which apply in this case: 1) the tortfeasor payment of $20,000.00 to Edward J. Dillon, Jr.; 2) the tortfeasor payment of $20,000.00 to Robert; and 3) the amount of worker's compensation benefits paid to Edward J. Dillon, Jr. in the amount of $132,895.84. The plaintiff disputes that the coverage should be reduced by Robert's $100,000.00 underinsured settlement with the defendant; or by worker's compensation or disability payments made to Robert. Also in dispute are payments made to Edward by a private disability insurer and any future worker's compensation payments that the plaintiff may receive.
Depending upon the reductions, the Offer of Judgment provisions of Connecticut Practice Book § 17-13 or 17-16 may apply. It was agreed at oral argument that Offer of Judgment interest, costs and attorneys fees, if any, are determined by the judgment amount. Civiello v.Owens-Corning Fiberglass Corp., 208 Conn. 82, 92-93, 544 A.2d 158
(1988).
Discussion
"Our Supreme Court and Appellate Court repeatedly have held that the only manner and extent to which an insurer may limit its liability for underinsured motorist benefits to an insured-claimant is (1) if the insurer's policy of insurance so provides, and (2) the provision in the policy of insurance complies with General Statutes § 38a-336 or §38a-334-6 (d) of the Regulations of Connecticut State Agencies." Ohmesv. Government Employees Insurance Company, 1995 Ct. Sup. 950, No. 316002, Superior Court Judicial District of Fairfield (Jan. 11, 1995, Levin, J.) "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Schultz v. Hartford Fire Ins. Co.,213 Conn. 696, 702, 569 A.2d 1131 (1990). The policy words must be accorded their natural and ordinary meaning. Kelly v. Figueiredo,
CT Page 13964
223 Conn. 31, 35, 610 A.2d 1296 (1992). Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured. A mere difference in opinion between the parties as to the interpretation of the policy language does not necessitate a conclusion that the language is ambiguous. Stephan v.Pennsylvania General Ins. Co., 224 Conn. 758, 763, 621 A.2d 258 (1993).
Preliminarily, the plaintiff argues that the defendant is not entitled to invoke the reduction provisions of the underinsured motorist policy because it has not met its burden of showing that conversion coverage was offered to the plaintiff. Connecticut General Statute § 38a-336a (a) requires that insurers "offer" conversion coverage. There is no mandate, however, that the informed consent or execution of a written request for different coverage by the insured be obtained, as is true with the selection of lower limits of coverage by an insured. Connecticut General Statute § 38a-336 (a) (2); See: Jon Berk Michael C. Jainchill,Connecticut Law of Uninsured and Underinsured Motorist Coverage. § 1.6.3, fn. 44. There was no evidence presented on this issue, nor did the plaintiff support his position with legal authority. This court has insufficient bases to find that defendant has a burden to demonstrate compliance with Connecticut General Statute § 38a-336a (a) prior to moving under the provisions of its contract for a reduction in the policy limits. The merits of each issue in the defendant's motion, therefore, will be addressed separately.
I. Reduction of the Policy Limits by the $100,000.00 Settlement to Robert
In its brief, the defendant looks to Section D, paragraph 1 of its policy to support its argument that the limits of coverage must be reduced by the underinsured motorist settlement monies paid to Robert. The paragraph cited, however, states that the total payments, to all insureds, for all damages resulting from any one accident cannot exceed the coverage limit of $1,000,000.00. It does not provide for a mechanical reduction of the policy limits as do Sections D, paragraphs 2a and 2b.
During oral argument, defense counsel referred to Section D, paragraph 2b as a basis for reducing the policy limits by Robert's settlement amount. This section, which shadows the Regulations of Connecticut State Agencies § 38a-334-6 (d) (1) (A),[1] pertains to payments made on behalf of the tortfeasor. See: Jon Berk and Michael C. Jainchill,Connecticut Law of Uninsured and Underinsured Motorist Coverage, § 6.2. Payments made pursuant to an underinsured motorist policy, however, are made on behalf of the insured. "The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a
CT Page 13965
contractual obligation arising under the policy of insurance State FarmMutual Automobile Ins. Co. v. Board of Regents of the University Systemof Georgia, 226 Ga. 310, 311, 174 S.E.2d 920 (1970). Payments made pursuant to an uninsured motorist policy are paid on behalf of the insured, and not on behalf of the financially irresponsible motorist who has caused the insured's injuries. Pecker v. Aetna Casualty SuretyCo., 171 Conn. 443, 452, 370 A.2d 1006 (1976)." (Emphasis in original; internal quotation marks omitted.) Mazziotti v. Allstate Ins. Co.,240 Conn. 799, 817, 695 A.2d 1010 (1997).
Without contractual, statutory or regulatory authority this court cannot reduce the limits of coverage by the settlement amount paid to Robert. Whether or not the defendant's policy limits are implicated here is a separate matter and will be addressed below.
II. Reduction of the Policy by Robert's Worker's Compensation Benefit Payments
Under Section D, paragraph 2a of the applicable policy, the limits of liability shall be reduced, inter alia, by "all sums payable under worker's compensation. . . ." The plaintiff argues that this provision pertains to the worker's compensation benefits paid to the plaintiff, Edward, but not to those made to his brother, Robert. This court is not convinced. The plaintiff agrees that Section 2b, which reduces the policy limits for "all sums paid on or for anyone who is legally responsible, . . ." applies to tortfeasor payments made on behalf of both Edward and Robert. The language in Section D, paragraph 2a is virtually identical. The plaintiff did not address this point in his brief.
During oral argument, the plaintiff focused on the interpretation of the regulation; not the insurance policy. Connecticut Regulation §38a-334-6 (d) (1) (B), provides for the reduction of the policy limits to the extent that damages have been . . . "paid or are payable under any workers' compensation law, . . ." The regulatory language is broad and does not restrict reduction to payments made on behalf of a single claimant. Moreover, the language is similar to that of Connecticut Regulation § 38a-334-6 (d) (1) (A), which has been interpreted as reducing liability limits by damage payments made to multiple claimants. See: Allstate Ins., Co. v. Lenda, 34 Conn. App. 444, 642 A.2d 22 (1994). This court holds that the defendant's policy requires a reduction in policy limits for all sums paid, for all insureds, under any worker's compensation, including Robert. The policy provision is consistent with Connecticut Regulation § 38a-334-6 (d) (1) (B); therefore, the limits of liability should be reduced by the amount of worker's compensation
CT Page 13966
payments to Robert.
III. Private Disability Payments to Edward and Robert
While the underinsured motorist policy at issue provides for a reduction in limits for "all sums paid under . . . disability benefits . . ." § 38-334-6 (d) (1) of the Connecticut Regulations does not allow this reduction. Accordingly, the private disability payments to Edward and Robert cannot be utilized to reduce the limits of coverage. The defendant also argues that Edward's disability payments should operate as collateral source payments to reduce the amount of the plaintiffs award of damages under Connecticut Statute § 52-225b. See: Smith v. SafecoIns., Co. of America, 225 Conn. 566, 624 A.2d 892 (1993). While this court could find no Appellate Court case addressing the issue as to whether monies received through private disability insurance constitute collateral source payments, there are a number of diverse Superior Court decisions on this point.
This court is persuaded by the reasoning of Judge West, in Medina v.Rousseau, 1999 Ct. Sup. 12961, Superior Court Judicial District of Waterbury (Sept. 24, 1999). After thoroughly analyzing the legislative history of Connecticut General Statute § 52-225b, Judge West concluded that the legislature did not intend disability benefits to be included as collateral source payments. "The legislative history is most persuasive and this court will not include in the language of §52-225b a meaning which the legislature specifically rejected." Id. Accordingly, the plaintiffs disability payments are not collateral source payments under Connecticut General Statute § 52-225b. No amount will be deducted from either the policy limits or the award of damages for the private disability insurance payments.
IV. Potential Worker's Compensation Payments to Edward
Citing Rydingsword v. Liberty Mutual Ins., Co., 224 Conn. 8,615 A.2d 1032 (1992), the defendant argues that the underinsured motorist policy limits should be reduced by future worker compensation payments to Edward. In Rydingsword, the plaintiff, who was injured during the course of his employment, received some benefits through worker's compensation. The plaintiff had not pursued a claim, however, for the 20% disability to his lumbar spine. Connecticut General Statute § 31-308 (b) articulates a specific formula to determine the value of such a disability. Under terms of the contract, the defendant sought to have the policy limits reduced by this amount, as sums "paid or payable . . . under . . . worker's compensation law. . . ." The Supreme Court held that under the exclusion clause of the underinsured motorist policy and Connecticut
CT Page 13967
Regulation § 38-175a-6[d], the limits of coverage should be reduced by this prospective specific indemnity award:
We conclude that the phrase "sums . . . payable" is not ambiguous but plainly means an ascertained amount of money that is capable of being paid. The clear language of the exclusion clause of the policy must be read to include a workers' compensation specific indemnity award that may at some future time be paid or payable to a claimant who has chosen to bypass the workers' compensation forum and to proceed first to demand arbitration of a claim pursuant to underinsured motorist coverage.
Rydingsword v. Liberty Mutual Ins., Co., supra at 17.
In its brief, the defendant propounds that the economic damage award of $588,000.00 represents $96,000.00 in past medical expenses and $108,000.00 in past lost wages. Although interrogatories were not submitted to the jury on this issue, the defendant concludes that the jury awarded $143,000.00 in future lost wages, which is the amount plaintiffs counsel argued to the jury. According to the defendant, the remaining $241,000.00 represents the jury's award for future expenses, which should be deducted from the policy limits as amounts payable under worker's compensation.
The defendant's conclusions concerning the jury's award for future damages are speculative. Moreover, the defendant assumes that this amount represents sums payable under worker's compensation. Here, there is insufficient evidence from which to calculate such a prospective worker's compensation award to the plaintiff. Unlike Rydingsword, there is no statutory formula that applies in this case to calculate prospective payments. The defendant further opines that the reduction must be made to prevent "double recovery" by the plaintiff, a principle which underlies both underinsured motorist and worker's compensation legislation.Rydingsword v. Liberty Mutual Ins., Co., supra at 18. Any "double recovery" in this case is at best uncertain. Moreover, reducing the policy limits by a hypothetical future worker's compensation payment would undermine the essential purpose of underinsured motorist coverage which is to "place the insured in the same position as, but no better position than, the insured would have been had the underinsured tortfeasor been fully insured." (Emphasis in original.) Haynes v. Yale-New HavenHospital, 243 Conn. 17, 27, 699 A.2d 964 (1997). In this case, the argued prospective worker's compensation payment to the plaintiff is indefinite and incalculable; it cannot form the basis of a reduction underRydingsword
CT Page 13968
Conclusion
Based on the foregoing, the limits of coverage are reduced as follows:
$1,000,000.00 Total Coverage
 — $20,000.00 Tortfeasor payment to Edward — $20,000.00 Tortfeasor payment to Robert — $132,895.00 Worker's Compensation payment to Edward — $51.224.92 Worker's Compensation payment to Robert ------------- $775,880.08 Total After Reductions
The amount on the policy after reductions, $775,880.01, exceeds the plaintiffs Offer of Judgment. Judgment may enter for the plaintiff for $775,880.01, plus Offer of Judgment interest of $148,989.29, as calculated below[2], plus costs pursuant to Practice Book § 18-5.[3]
 ___________________ WOLVEN, JUDGE